UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LETICIA MARRERO,

                              Plaintiff,

        v.

MARTIN O'MALLEY, COMMISSIONER
OF SOCIAL SECURITY,

                              Defendant.[1]

---

No. 22-CV-7982 (KMK) (AEK)

ORDER ADOPTING
REPORT & RECOMMENDATION

---

KENNETH M. KARAS, United States District Judge:

        Leticia Marrero ("Plaintiff") brings this Action against the Commissioner of the Social

Security Administration Martin O'Malley ("Defendant" or the "Commissioner") pursuant to 42

U.S.C. § 405(g), challenging the decision of an administrative law judge ("ALJ"), denying her

application for disability insurance benefits under the Social Security Act.  (*See* Compl. (Dkt.

No. 1).)[2]  On September 22, 2022, the Court referred the case to Judge Krause.  (*See* Dkt. No. 6.)

---

        [1] Commissioner of the Social Security Administration Martin O'Malley has been
automatically substituted for the "Acting Commissioner of Social Security" as Defendant in this
Action pursuant to Federal Rule of Civil Procedure 25(d).  The Clerk of Court is respectfully
directed to update the docket accordingly.

        [2] As the Report & Recommendation ("R&R") underlying this Order points out, the
Complaint "incorrectly states that Plaintiff was denied supplemental security income."  (R&R
1 n.2 (Dkt. No. 18); *see also* Compl. ¶¶ 3, 16, 19; *id.* at 4.)  That is not the only error identified in
Plaintiff's papers.  In particular, the Court notes that the Complaint erroneously identifies the
ALJ who most recently denied her application for Social Security disability insurance benefits as
Vernon S. Broderick—a district judge in this District—rather than Peter Beekman, (*see* Compl.
¶¶ 15–17), and the Conclusions to both the instant objections and the reply to Defendant's
response to those objections, erroneously identify Magistrate Judge Andrew E. Krause ("Judge
Krause") as "Magistrate Judge Jones," (Pls.' Objs. to the R&R ("Pl.'s Objs.") 15 (Dkt. No. 19);
Pl.'s Reply to Def.'s Resp. ("Pl.'s Reply") 3 (Dkt. No. 23)).  The Court trusts that, moving
forward, counsel for Plaintiff will be sure to exercise the appropriate degree of care when
preparing court filings.

Plaintiff and Defendant both filed Motions for Judgment on the Pleadings.  (*See* Dkt. Nos. 12, 15.)  On February 14, 2024, Judge Krause issued a thorough and well-reasoned R&R, recommending that the Court deny Plaintiff's Motion for Judgment on the Pleadings and grant Defendant's Cross-Motion for Judgment on the Pleadings.  (*See* R&R 35.)  Plaintiff filed objections to the R&R on February 28, 2024, (*see* Pl.'s Objs.), and Defendant filed a response on March 13, 2024, (*see* Def.'s Resp. to Pl.'s Objs. ("Def.'s Resp.") (Dkt. No. 20)).  With the Court's permission, (*see* Dkt. No. 22), Plaintiff filed a reply to Defendant's response on March 14, 2024, (*see* Pl.'s Reply).

For the reasons discussed below, the Court adopts the result recommended in the R&R and overrules Plaintiff's objections.

<u>I.  Discussion</u>

<u>A.  Standard of Review</u>

<u>1.  Review of a Report and Recommendation</u>

A district court addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1).  Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party specifically

_____

Separately, unless otherwise noted, the Court cites to the ECF-stamped page number in the upper righthand corner of each page.

objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt

those portions of the . . . report [and recommendation] to which no 'specific written objection' is

made, so long as the factual and legal bases supporting the findings and conclusions set forth in

those sections are not clearly erroneous or contrary to law."  *Sherwood v. Kijakazi*, No. 21-CV-

10847, 2023 WL 2662804, at *1 (S.D.N.Y. Mar. 28, 2023) (alterations in original) (quoting

*Rogers v. Astrue*, 895 F. Supp. 2d 541, 547 (S.D.N.Y. 2012)); *accord* Fed. R. Civ. P. 72(b)(2).

"[F]ailure to object timely to a magistrate[ judge]'s report operates as a waiver of any further

judicial review of the magistrate[ judge]'s decision."  *Caidor v. Onondaga County*, 517 F.3d

601, 604 (2d Cir. 2008) (citation omitted).  Moreover, "objections that are merely perfunctory

responses argued in an attempt to engage the district court in a rehashing of the same arguments

set forth in the original papers will not suffice to invoke de novo review [of the magistrate

judge's recommendations]."  *Belen v. Colvin*, No. 14-CV-6898, 2020 WL 3056451, at *2

(S.D.N.Y. June 9, 2020) (alterations adopted) (italics and quotation marks omitted); *see also*

*George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433–34 (S.D.N.Y. 2016) (same).

### 2.  Review of a Social Security Claim

In evaluating a social security claim, the reviewing court does not determine for itself

whether the plaintiff was disabled and therefore entitled to social security benefits.  *See Cage v.*

*Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e do not substitute our judgment for

the agency's, or determine de novo whether the claimant [was] disabled." (alteration adopted)

(citations, quotation marks, and italics omitted)).  Instead, the reviewing court considers

"whether the correct legal standards were applied and whether substantial evidence supports the

decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  Accordingly, a court may

overturn an ALJ's determination only if it was "based upon legal error" or "not supported by

substantial evidence."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Balsamo v.*

3

*Chater*, 142 F.3d 75, 79 (2d Cir. 1998)); *see also Cage*, 692 F.3d at 122 ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision[.]" (alteration in original) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009))).  "Substantial evidence[] . . . is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rosa*, 168 F.3d at 77 (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (same).  In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).  Nevertheless, "[t]he substantial evidence standard is a very deferential standard of review[.]"  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted).  Indeed, even "[i]f [the] evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (explaining that the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*" (emphasis in original) (citation omitted)).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

1.  The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.  If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.  If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, [the] claimant has an

4

> impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him [or her] disabled, without considering vocational factors such as age, education, and work experience.

> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity [("RFC")] to perform his or her past work.

> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v).  The claimant bears the burden of proof for the first four steps.  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If, however, the claimant proves that her impairment prevents her from performing her past work, the burden shifts to the Commissioner at the fifth step.  *See id.*  There, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform."  *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002).  If the ALJ determines that a "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre*, 758 F.3d at 151, the ALJ must deny disability insurance benefits to the claimant, *see* 20 C.F.R. § 404.1520(a)(4)(v); *see also* 42 U.S.C. § 423(d)(2)(A) (providing that an individual is disabled under the Social Security Act when he or she suffers from an impairment that is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot[] . . . engage in any other kind of substantial gainful work which exists in the national economy[,]" that is, "work which exists in significant numbers either in the region where such individual lives or in several regions of the country").

B.  Analysis

The Court adopts the recitations of facts set forth by Judge Krause in the R&R, which itself adopts the Parties summaries of the evidence concerning Plaintiff's alleged disability, (*see* R&R 2–4), and assumes the Parties' familiarity with the underlying record.  The Court will repeat only those facts relevant to its consideration of Plaintiff's objections.  The facts are taken from the administrative record ("R.") of the Social Security Administration, filed by the Commissioner on January 9, 2023.  (*See generally* Dkt. No. 9.)[3]

Overall, Plaintiff objects to two of Judge Krause's recommended findings: (1) that the ALJ properly evaluated the medical opinion evidence and properly determined Plaintiff's RFC; and (2) that the ALJ properly evaluated Plaintiff's subjective statements regarding her alleged disabling limitations.  (*See* Pl.'s Objs. 2.)  The Court addresses these objections below.

1.  Medical Opinion Evidence

Plaintiff contends—as she did before Judge Krause—that the ALJ did not properly consider the medical opinion of Plaintiff's "treating[,] board-certified psychiatrist, Dr. Bulbena-Cabre[.]"  (Pl.'s Objs. 2.)  Among other things, Plaintiff specifically asserts that accepting certain of Dr. Bulbena-Cabre's conclusions would compel a finding that Plaintiff is disabled.  (*See id.* at 3.)  Further, Plaintiff argues that, notwithstanding Judge Krause's and the ALJ's conclusions to the contrary, "there is no inconsistency between the evidence Dr. Bulbena-Cabre cited as support for her opinions and the underlying records."  (*Id.* at 4–5.)[4]  The Court disagrees.

---

[3] When referring to the administrative record, the Court cites to the stamped page numbers in the bottom righthand corner of the page.

[4] Plaintiff's remaining arguments concerning Dr. Bulbena-Cabre's medical opinion are discussed below.  *See infra* Section I.B.3.

Although the medical opinion of a treating physician must generally be given "controlling weight," an ALJ may disregard the opinion where it is contradicted by the weight of other record evidence or is internally inconsistent. *See Olmo v. Saul*, No. 19-CV-57, 2020 WL 7335312, at *3 (S.D.N.Y. Dec. 14, 2020) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion[] . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").[5] An ALJ must give "'good reasons'—i.e., reasons supported by substantial evidence in the record— for the weight [he or] she affords the treating source's medical opinion." *Schillo*, 31 F.4th at 75 (citing *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

With respect to the medical opinion of Dr. Bulbena-Cabre, Judge Krause explained that the ALJ gave "little weight" to that opinion because Dr. Bulbena-Cabre herself noted: "that she only saw [Plaintiff] 4 times"; "[Plaintiff's] case was closed due to inconsistent follow-up"; and "[Plaintiff's] symptoms related back to 2015, but she d[id] not explain the discrepancy between the treating relationship only dating back to 2020, and her noting [Plaintiff's] symptoms related back to 2015." (R&R 15 (third alteration added) (quoting R. 964); *see also* R. 1504–09 (Psychiatric/Psychological Impairment Questionnaire completed by Dr. Bulbena-Cabre).) More specifically, the record reflects that Plaintiff only had three appointments with Dr. Bulbena-Cabre, and that each of those appointments was in 2020, several years after Plaintiff's date last insured. (*See* R&R 15 (citing R. 1520–26).) Moreover, even Dr. Bulbena-Cabre recognized her

---

[5] The Court notes that this so-called "treating physician rule" applies only to claims filed before March 27, 2017, such as Plaintiff's claim. *See Schillo*, 31 F.4th at 70–71 & n.1. (*See also* R&R 2 (stating that Plaintiff filed her application for disability insurance benefits on February 23, 2017).)

limited treatment relationship with Plaintiff in the questionnaire reflecting her medical opinion, which states that Plaintiff was "seen by examiner 4 tim[e]s (case closed due to inconsistent [follow-up] care)" and that "further [follow up]" would be needed "to provide an accurate answer" to the following prompt:  "List and discuss any other clinical findings which support your diagnoses and assessment . . . [.]"  (R. 1504, 1506.)  Importantly, rather than answer the question "[d]oes your patient experience episodes of decompensation or deterioration in a work or work-like setting which causes them to withdraw from the situation and/or experience an exacerbation of symptoms[,]" Dr. Bulbena-Cabre merely wrote, "Unknown[,] patient seen only 4 times." (*Id.* at 1506.)  Additionally, as Judge Krause helpfully observed, Dr. Bulbena-Cabre's determination that, with one exception, Plaintiff suffered from "none-mild-moderate limitations in the mental functional areas" is amply supported by the record.  (R&R 17–18 (quoting R. 964).)  For instance, beyond the fact that Plaintiff did not seek mental health treatment for nearly six years, Judge Krause cites numerous treatment records stating, inter alia, that Plaintiff "presented with content affect [at appointments], appeared well[-]groomed, denied suicidal/homicidal ideation, denied auditory/visual hallucinations[,] . . . [had] intact affect, mood, and behaviors[,] . . . displayed good memory . . . [,] was alert, active, and oriented . . . [,] and had no unusual perceptions and no obsessions or compulsions." (*See id.* (citations and quotation marks omitted).)[6]

---

[6] To be sure, the record reflects evidence that Plaintiff did suffer from certain mental limitations.  (*See* R&R 18 n.10.)  However, the ALJ accounted for this evidence by, among other things, assigning a degree of weight—rather than no weight—to Dr. Bulbena-Cabre's medical opinion.  (*See* R. 964.)  Further, it is worth noting in this connection that, "[t]o the extent that there are conflicts in the medical evidence, the Court must defer to the Commissioner's resolution of such conflicts."  *Nizinski v. O'Malley*, No. 20-CV-5258, 2024 WL 665941, at *4 (E.D.N.Y. Feb. 16, 2024) (citing *Cage*, 692 F.3d at 122).

In short, the Court fully adopts Judge Krause's well-reasoned assessment that the ALJ "articulate[d] 'good reasons' to rebut the presumption of controlling deference conferred on the treating physician's opinion." *Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022). (*See* R&R 15–20.) Put another way, given that Plaintiff has failed to show that no reasonable factfinder could have reached an outcome similar to the one reached by the ALJ, the ALJ's decision as to Dr. Bulbena-Cabre's medical opinion should be upheld. *See Brault*, 683 F.3d at 448 ("The substantial evidence standard means once an ALJ finds facts, [reviewing courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (emphasis in original) (quotation marks omitted)).[7]

Turning to Plaintiff's argument that "there is no inconsistency between the evidence Dr. Bulbena-Cabre cited as support for her opinions and the underlying records[,]" (Pl.'s Objs. 4–5), the Court is not persuaded that this argument provides any basis for remand. Plaintiff cites evidence that she suffered from a variety of "clinical abnormalities" before her date last insured, such as "problems concentrating/thinking," "significant worry," "racing thoughts," and "isolation/withdrawal from others." (*Id.*) As an initial matter, the Court notes that Plaintiff appears to be conflating the concepts of mental health diagnoses and symptoms stemming therefrom, with findings of disability under the Social Security Act, the latter of which require a determination that a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[7] Although Plaintiff places significant focus on Dr. Bulbena-Cabre's conclusions that she suffered from multiple "moderate" mental limitations, and her corresponding argument that—per certain vocational witnesses—she might not be able to work based on those limitations, (*see* Pl.'s Objs. 3; Pl.'s Reply 3), she conveniently ignores the fact that Dr. Bulbena-Cabre herself opined that Plaintiff was likely to be absent from work as a result of her mental impairment no more than once per month, (*see* R. 1508).

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *see also Snell*, 177 F.3d at 133  ("[T]he ultimate finding of

whether a claimant is disabled and cannot work—[is] reserved to the Commissioner." (quotation

marks omitted)).  In any event, as Judge Krause explained and as noted above, there is also

substantial evidence in the record that would cut against any finding that Plaintiff is disabled.

(*See* R&R 17–18.)  *See also Schillo*, 31 F.4th at 74 ("The substantial evidence standard is a very

deferential standard of review[.]" (quotation marks omitted)).  Simply put, "[g]enuine conflicts

in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhart*, 312 F.3d 578,

588 (2d Cir. 2002); *accord Nicoletti v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-5141, 2022 WL

4592902, at *3 (S.D.N.Y. Sept. 30, 2022).

     The Court is also unconvinced by Plaintiff's attempt to distinguish certain Second Circuit

cases that Judge Krause cited in the R&R.  (*See* Pl.'s Objs. 3–4.)  Plaintiff takes issue with the

following:

> The Second Circuit has held that moderate limitations in mental functioning are
> consistent with an RFC for unskilled work—the kind of work the ALJ found
> Plaintiff could perform.  *See, e.g.*, *Rushford v. Kijakazi*, No. 23-317, 2023 WL
> 8946622, at *2 (2d Cir. Dec. 28, 2023) (summary order) ("After a thorough, multi-
> page analysis, the ALJ concluded that, even with his moderate limitations [in four
> mental areas], Rushford could still engage in 'unskilled, simple, and routine tasks.'
> . . .  And it is well-established that such moderate limitations do not prevent
> individuals from performing 'unskilled work.'") (citing *Zabala v. Astrue*, 595 F.3d
> 402, 410–11 (2d Cir. 2010)); *McIntyre*, 758 F.3d at 152.

(R&R 19–20 (alterations in original).)  In particular, Plaintiff contends that "in *Rushford*, an

unpublished non-precedential case, there is no indication of what areas of functioning the

claimant had moderate limitations in"; "in *Zabala*[,] no specific moderate limitations in any areas

of mental functioning were identified in the Court's decision for the claimant"; and "[i]n

*McIntyre*, the ALJ's mental RFC was supported by opinions from an examining specialist, which

were credited by the ALJ and there were no opinions that found greater limitations for the claimant." (Pl.'s Objs. 4 (citations omitted).)[8]

However, as to *Rushford* and *Zabala*, Plaintiff misses the point; even assuming that the plaintiffs in those cases had different sorts of "moderate" limitations in their mental functioning as compared to Plaintiff, the law remains clear that ALJs are not precluded from finding claimants can perform unskilled work even where there is substantial evidence that they suffer from *moderate* limitations to their mental functioning. *See, e.g.*, *Zabala*, 595 F.3d at 410 (concluding that the ALJ's decision that the plaintiff "could perform her previous unskilled work was well supported" where there was evidence that she had "moderate limitations in her work-related functioning", notwithstanding the fact that "there was some conflicting medical evidence" in the record); *see also Jacqueline O. v. Comm'r of Soc. Sec.*, No. 21-CV-2468, 2022 WL 6564679, at *4 (S.D.N.Y. Sept. 2, 2022) (noting that "an ALJ can account for moderate mental impairments, including moderate (or even marked) impairment[s] in the claimant's ability to adapt and manage herself, through an RFC containing non-exertional limitations" and collecting cases), *report and recommendation adopted*, 2022 WL 4463845 (S.D.N.Y. Sept. 26, 2022); *cf. Richard B. v. Comm'r of Soc. Sec.*, No. 20-CV-585, 2021 WL 4316908, at *8 (W.D.N.Y. Sept. 23, 2021) (finding that a consultative examiner's opinion that the plaintiff had *marked* limitations in his ability to regulate emotions, control behavior, and maintain well-being was fairly incorporated into an RFC limiting him to simple and low stress work with no independent decision-making or goal setting, no strict production quotas, and minimal changes in routine and processes); *Hill v. Comm'r of Soc. Sec.*, No. 18-CV-1161, 2020 WL 836386, at *4–5

---

[8] With respect to *Zabala*, Plaintiff is wrong. The Second Circuit there did note the ALJ's finding that the plaintiff was "moderately limited in her ability to maintain concentration." *Zabala*, 595 F.3d at 407.

(W.D.N.Y. Feb. 20, 2020) (finding that a limitation to simple and routine tasks, simple work-related decisions, and only occasional interaction with others adequately accommodated *marked* limitations in a claimant's ability to adapt and manage oneself).  Nor do the factual circumstances in *McIntyre* affect that general proposition.  *See McIntyre*, 758 F.3d at 150–52 (concluding that "substantial evidence in the record demonstrate[d] that [the plaintiff could] engage in 'simple, routine, low stress tasks,' notwithstanding her physical limitations and her limitations in concentration, persistence, and pace" where a "psychiatric consultative examiner" noted that the plaintiff "[got] along with friends and family and that her attention and concentration [were] intact, but . . . reported having difficulty sleeping" and where that clinician opined that the plaintiff "(1) was capable of understanding and following simple instructions, and performing some complex tasks with supervision and independently; (2) appeared capable of maintaining attention and concentration for tasks and could regularly attend to a routine and maintain a schedule; (3) appeared capable of learning new tasks, making appropriate decisions and relating to and interacting moderately with others; and (4) could deal with stress with the help of medication").  In addition, Plaintiff cites no case holding that the existence of "opinions [finding greater-than-moderate] limitations" is necessarily dispositive in circumstances similar to those in this case.  (Pl.'s Objs. 4.)[9]

Plaintiff also argues that Judge Krause and the ALJ inappropriately considered the fact that she did not receive mental health treatment between when she first requested a psychiatric

---

[9] Plaintiff also asserts that "it is unreasonable to suggest that all 'moderate' limitations are created equal.  For example, a 'moderate' limitation performing complex and/or detailed tasks is not the same as a 'moderate' limitation performing even simple tasks."  (*See* Pl.'s Objs. 4.) However, the Court highlights that Plaintiff cites no case law for this sliding-scale definition of "moderate," which appears to have been fashioned out of whole cloth and parroted from her reply brief in support of her Motion for Judgment on the Pleadings.  (*Compare* Pl.'s Objs. 4, *with* Reply Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot. Reply") 4 (Dkt. No. 17).)

referral in October 2010 and August 2016—a delay of nearly six years—when discounting Dr. Bulbena-Cabre's medical opinion.  (*See* Pl.'s Objs. 7–8; *see also* R&R 17.)  To be sure, "an ALJ may not discount a [Social Security] claimant's failure to seek treatment without first exploring the reasons why the claimant did not seek treatment, especially where the lack of treatment pertains to a plaintiff's mental impairments."  *Hsieh v. Comm'r of Soc. Sec.*, No. 21-CV-1793, 2024 WL 230318, at *10 (E.D.N.Y. Jan. 22, 2024) (citation omitted) (collecting cases).  However, the ALJ did explore the reasons behind Plaintiff's delay in seeking mental health treatment here.  Specifically, the ALJ pointed out that Plaintiff admitted that she was "non-compliant with" recommended treatment and "declined previous recommendations *because of her religion*."  (R. 961 (emphasis added); *see also id.* at 478 (treatment note explaining that Plaintiff "report[ed] she was non[-]compliant with treatment and declined previous recommendations because of her religion" and reporting that Plaintiff stated "she never thought she, as a minister with [her] own church would be seeing a [social worker]").)

In support of her argument, Plaintiff cites evidence purporting to demonstrate that Plaintiff suffers from "decreased insight and/or judgment[,]" presumably to suggest that those symptoms prevented her from seeking mental health treatment sooner.  (Pl.'s Objs. 8.)  However, those citations—which all post-date Plaintiff's date last insured—do nothing to connect Plaintiff's "poor" or "fair" insight and judgment to her ability to seek mental health treatment; indeed, the fact that Plaintiff's citations are to *treatment records* undercuts her argument.  (*See id.* (citing R. 745, 840, 887, 895, 904, 919, 1528, 1530).)[10]

_____

[10] Insofar as Plaintiff argues that the ALJ procedurally erred by failing explicitly to consider "all the relevant factors" when weighing Dr. Bulbena-Cabre's medical opinion, (*see* Pl.'s Objs. 9–10), the Court disagrees.  Plaintiff raises this objection in a brief, conclusory paragraph that lacks citations to either applicable case law or the underlying administrative record.  (*See id.* (citing only the R&R).)  As discussed in more detail below, *see infra* Section

In sum, the Court overrules Plaintiff's foregoing objections relating to Dr. Bulbena-Cabre's medical opinion.[11]

### 2. Plaintiff's Subjective Statements

Plaintiff also objects to Judge Krause's recommendation that the Court conclude that "the ALJ properly discounted [Plaintiff's] statements [regarding her alleged disabling limitations] because (1) Plaintiff failed to always follow through with recommended psychiatric treatment; (2) some mental status findings were mild or normal; and (3) [Plaintiff] engaged in some activities of daily living." (Pl.'s Objs. 13–15.)

Under the applicable regulations, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); *accord Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Second, if the ALJ finds such an impairment, then the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit her capacity to work. 20 C.F.R. § 404.1529(c). At this step, the ALJ considers the objective evidence and other evidence including the claimant's daily activities; location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; the type dosage, effectiveness and side of effects of medications; any treatment, other than medication, that the claimant has received; any other measures the claimant employs to relieve symptoms;

---

I.B.3, such "perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review"; instead, objections of this nature are entitled to only clear error review. *Belen*, 2020 WL 3056451, at *2 (alteration adopted) (italics and citation omitted). This Court discerns no error in Judge Krause's assessment of this issue. (*See* R&R 20 (citing R. 958–61).)

[11] Plaintiff's objections relating to the medical opinions of L.C.S.W. Marrero and Dr. Valencia-Payne are discussed below. *See infra* Section I.B.3.

and other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms.  20 C.F.R. § 404.1529(c)(2)–(3); *accord Selimaj v. Berryhill*, No. 17-CV-3389, 2019 WL 1417050, at *7 (S.D.N.Y. Mar. 29, 2019).

Nevertheless, "an ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 763 (S.D.N.Y. 2018) (quotation marks omitted); *see also Farmer v. Acting Comm'r of Soc. Sec.*, No. 22-CV-4718, 2024 WL 1047908, at *3 (S.D.N.Y. Mar. 11, 2024) (same).  Indeed, this Court "must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while testifying." *Hall v. Kijakazi*, No. 20-CV-7320, 2022 WL 4592913, at *4 (S.D.N.Y. Sept. 30, 2022) (quoting *Jimenez v. Colvin*, 12-CV-6001, 2016 WL 5660322, at *13 (S.D.N.Y. Sept. 30, 2016)); *see also Marquez v. Colvin*, No. 12-CV-6819, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (same).

To start, as Defendant notes, "Plaintiff abandons her previous argument [before Judge Krause] that the ALJ's analysis [regarding her subjective statements] was conclusory, opting now to argue that the ALJ and Judge Krause overly emphasized her activities of daily living and normal mental status examinations."  (Def.'s Resp. 9; *see* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot. Mem.") 26–30 (Dkt. No. 13); Pl.'s Mot. Reply 7.)  "In [the Second C]ircuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Little v. Comm'r of Soc. Sec.*, No. 20-CV-5431, 2021 WL 5233563, at *2 (S.D.N.Y. Nov. 10, 2021) (quotation marks omitted); *accord Dalia L. P. v. Comm'r of Soc. Sec.*, No. 22-CV-522, 2023 WL 5088932, at *2 (N.D.N.Y. Aug. 9, 2023); *cf.*

*Zhao v. State Univ. of N.Y.*, No. 04-CV-210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011)

(similar).  Thus, the Court could overrule this objection on that basis alone.

In any case, after conducting a de novo review, the Court agrees with Judge Krause's

thorough assessment of the ALJ's evaluation of Plaintiff's subjective statements.  (*See* R&R 31–

35.)  With respect to the Plaintiff's statements regarding the severity of her symptoms, the ALJ

specifically explained that he found that:

> [Plaintiff's] medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, [Plaintiff's] statements concerning the
> intensity, persistence[,] and limiting effects of these symptoms are not entirely
> consistent with the medical evidence and other evidence in the record for the
> reasons explained in this decision.

(R. 960; *see also id.* at 960–61 ("As for [Plaintiff's] statements about the intensity, persistence,

and limiting effects of her symptoms, they are only partially consistent with both the objective

and subjective evidence of record, because the treatment notes do not show the serious

symptoms and dysfunction that would be expected were the claimant as limited as alleged.").)

The ALJ then justified that conclusion by setting forth a detailed summary of the relevant record

evidence, including, inter alia, that Plaintiff: did not receive treatment until over five-and-a-half

years after her alleged disability onset date "because of her religion"; received therapeutic

counseling but was not prescribed any medication for her affective disorder; had a therapeutic

treatment goal to "increase social activities"; was "stressed due to her relationships with her

family"; and had treatment records reflecting "intact affect, mood, and behaviors," "good

memory," and that Plaintiff "was alert, active, and oriented at medical visits," and also "had no

unusual perceptions and no obsessions or compulsions."  (*See id.* at 961; *see also* R&R 31–33.)[12]

---

[12] Importantly, to the degree that there was evidence in the record that Plaintiff had a
disabling condition during the relevant time period, that evidence was reflected in the ALJ's
RFC determination, which included certain "nonexertional limitations," including that Plaintiff
could do "no complex tasks," as well as the ALJ's decisions to limit Plaintiff to: "simple, routine

As Judge Krause explained, the ALJ noted elsewhere in his decision—"in the context of step three of the disability analysis"—that "Plaintiff's statements were at odds with other evidence in the record."  (R&R 33–34 (discussing and quoting R. 958–59).)  For example, Judge Krause pointed out that Plaintiff's self-reported symptoms of her disability were somewhat belied by her testimony that, among other things, she: has served as "a pastor at her church"; "does not have any problems getting along with others"; does not "need reminders to take care of her personal needs and grooming"; "goes grocery shopping"; "traveled to Florida to preside over a wedding"; exercises several times a week; and otherwise "can perform activities of daily living independently."  (*Id.* (alteration adopted) (citations omitted)); *see also Acevedo v. Comm'r of Soc. Sec.*, No. 21-CV-10621, 2023 WL 1433648, at *13 (S.D.N.Y. Feb. 1, 2023) (noting, where the plaintiff "self-report[ed] that on a typical day she cleans, takes her medication, and makes sure that her son is in school, that she has no problem with personal care, prepares meals daily, does not require special help or reminders to take care of personal needs and grooming, and does not need reminders about taking her medication, and that she is able to shop, attend medical appointments and church and sometimes use public transportation (albeit with some anxiety)[,]" that "[c]ourts have . . . affirmed findings that . . . individuals [showing similar mental limitations as the plaintiff] are not disabled within the meaning of the [Social Security] Act" and collecting cases).

---

tasks" and "occasional and superficial interactions with public[] and co-workers."  (R. 959–61, 964–65; *see also id.* at 965 ("I find moderate limitations and the above [RFC] due to mental impairments, but the degree of limitation [Plaintiff] is alleging with regard to her mental impairment is not supported by a preponderance of evidence.")  *Cf. McMillian v. Comm'r of Soc. Sec.*, No. 20-CV-7626, 2022 WL 457400, at *6 (S.D.N.Y. Feb. 15, 2022) ("[A] moderate limitation in the area of concentration, persistence, or pace does not preclude the ability to perform unskilled work.").

The Court therefore concludes that Judge Krause correctly determined that the ALJ's decision, including his discussion of the record evidence, supported the determination not to fully credit Plaintiff's subjective statements about the severity of her symptoms.  (R&R 34–35.) *See Hall v. Kijakazi*, No. 20-CV-7320, 2022 WL 6250384, at *13 (S.D.N.Y. Jan. 25, 2022) (noting an ALJ was "not required to accept [a] claimant's subjective complaints without question," and was entitled to exercise discretion in weighing symptoms in light of the other evidence in the underlying record (quoting *Martes*, 344 F. Supp. 3d at 762–63)), *report and recommendation adopted*, 2022 WL 4592913, at *1; *Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 287–88 (S.D.N.Y. 2019) (concluding that the ALJ properly considered and discounted the plaintiff's testimony regarding her ability to work due to inconsistencies between her allegations and the record).

To the extent Plaintiff argues that the ALJ "placed undue weight on evidence of [Plaintiff's] activities of daily living[,]" (Pl.'s Objs. 14), the Court disagrees.  Putting aside the fact that courts routinely consider claimants' activities of daily living when assessing how to weigh their subjective statements as to their asserted disabling conditions, *see, e.g.*, *Diaz v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-2256, 2023 WL 6390172, at *8 (S.D.N.Y. Sept. 29, 2023) (citing with approval the ALJ's consideration of the plaintiff's "daily activities," including that she "was in vocational school, training to become a medical assistant"); *Selimaj*, 2019 WL 1417050, at *8–9 (similar and collecting cases); *see also* 20 C.F.R. § 404.1529(c)(3) (providing that the Social Security Administration will consider benefits applicants' "daily activities" when determining whether they are disabled), the focus of the ALJ's assessment of Plaintiff's subjective statements was *not* on her activities of daily living, but rather her symptom, diagnosis, and treatment history during the relevant time period, (*see* R. 960–61).

In sum, the ALJ properly concluded that Plaintiff's testimony could not "reasonably be accepted as [fully] consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).[13]

### 3.  Plaintiff's Remaining Objections

Beyond the specific objections discussed above, Plaintiff raises a number of additional arguments against the R&R.  In particular, with respect to Dr. Bulbena-Cabre's medical opinion, Plaintiff asserts that the ALJ: (1) improperly focused on the fact that some of the record evidence reflected "normal and/or mild findings" when affording her medical opinion little weight, (Pl.'s Objs. 5–7); (2) erred in "discounting" her finding that Plaintiff's disability dated back to 2015 given that she began treating Plaintiff in 2020 and did not explain that temporal disconnect, (*id.* at 8–9); and (3) even if the ALJ did not err by failing to give her opinion controlling weight, it was still entitled to considerable "deference," (*see id.* at 9).  Additionally, Plaintiff contends that the ALJ improperly discounted the medical opinion of her "[l]ongtime treating therapist L.S.C.W. Marrero," (*id.* at 10–11), as well as that of "examining psychologist Dr. Valencia-Payne," (*id.* at 11–12).  Plaintiff also argues that the ALJ failed properly to determine her mental RFC.  (*Id.* at 12–13.)

However, each of these objections not only rehashes arguments presented to Judge Krause, but also copies those arguments verbatim—or nearly verbatim—from Plaintiff's briefing on the Parties' Motions for Judgment on the Pleadings.  (*Compare* Pl.'s Objs. 5–7, *with* Pl.'s

---

[13] Contrary to Plaintiff's suggestion, (*see* Pl.'s Objs. 14), the Second Circuit's decision in *Rucker v. Kijakazi*, 48 F.4th 86 (2d Cir. 2022) does not compel a different conclusion.  There, the Circuit simply held that the ALJ failed to provide "good reasons" for discounting a treating physician's opinion because her "[reliance] on attendance at medical appointments [was] unhelpful in determining whether [the plaintiff, who had] significant psychiatric issues [could] consistently show up and successfully function in a work environment."  *See Rucker*, 48 F.4th at 93.  Plaintiff does not argue that the ALJ erred in this way here.

Mot. Reply 5–7 (discussing, in connection with Dr. Bulbena-Cabre's medical opinion, the implications of "normal" treatment findings in the context of diagnosed mental health disorders); *compare* Pl.'s Objs. 8–9, *with* Pl.'s Mot. Mem. 19–20 (arguing, inter alia, that the ALJ erred by discounting Dr. Bulbena-Cabre's medical opinion "on the basis that [it was] based on a course of treatment that started [over three years] after the date last insured"); *compare* Pl.'s Objs. 9, *with* Pl.'s Mot. Mem. 22 (arguing that Dr. Bulbena-Cabre's medical opinion was at least entitled to significant "deference"); *compare* Pl.'s Objs. 10–11, *with* Pl.'s Mot. Mem. 22–24 (arguing that the ALJ improperly discounted L.C.S.W. Marrero's medical opinion); *compare* Pl.'s Objs. 11–12, *with* Pl.'s Mot. Mem. 24–25 (arguing that the ALJ improperly discounted examining psychologist Dr. Valencia-Payne's medical opinion); *compare* Pl.'s Objs. 12–13, *with* Pl.'s Mot. Mem. 25–26 (arguing that the ALJ failed properly to determine Plaintiff's mental RFC).)

Where, as here, a plaintiff's objections to an R&R "simply rehash the arguments presented to" the magistrate judge—or recites them more-or-less verbatim to the district judge—such objections "are reviewed only for clear error." *Williams v. Comm'r of Soc. Sec.*, No. 15-CV-6719, 2017 WL 4326119, at *1 (S.D.N.Y. Sept. 28, 2017) (quoting *Faucette v. Comm'r of Soc. Sec.*, No. 13-CV-4851, 2015 WL 5773565, at *3 (S.D.N.Y. Sept. 30, 2015)); *accord Holloway v. Colvin*, No. 14-CV-5165, 2016 WL 1275658, at *1–2 (S.D.N.Y. Mar. 31, 2016) ("Clear error review is especially appropriate where the objections are merely copied verbatim from the objecting party's earlier briefing."); *see also Farmer*, 2024 WL 1047908, at *1 (reviewing the plaintiff's objections for clear error where "entire passages of [her] objections [were] drawn, at times verbatim, from [her] brief in support of her motion for judgment on the pleadings"); *Gonzalez v. Kijakazi*, No. 21-CV-800, 2022 WL 3348525, at *1 (S.D.N.Y. Aug. 12, 2022) (same, where "[the] plaintiff's objections [were] copied verbatim from his original brief in

support of his motion for judgment on the pleadings, which [the magistrate judge] already considered and rejected" (citation omitted)).  "Clear error is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed."  *Martin v. Comm'r of Soc. Sec.*, No. 19-CV-5430, 2022 WL 4586174, at *1 (S.D.N.Y. Sept. 29, 2022) (alteration adopted) (quotation marks omitted).  The Court has carefully reviewed the R&R and Plaintiff's additional arguments outlined at the beginning of this Section, and it finds no substantive error, clear or otherwise.[14]

## II.  Conclusion

For the reasons set forth above, the Court adopts Judge Krause's R&R in its entirety, denies Plaintiff's Motion for Judgment on the Pleadings, and grants Defendant's Cross-Motion for Judgment on the Pleadings.  The final decision of the Commissioner is affirmed.  The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 12, 15), enter judgment for Defendant, and close this case.

SO ORDERED.

Dated:    March 28, 2024
          White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        United States District Judge

---

[14] To be clear, the outcome here would be the same even if the Court had reviewed Plaintiff's remaining objections de novo.

21